

FILED
LODGED
RECEIVED    MAIL

DEC  06 2006

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
BY                    DEPUTY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

PENNSYLVANIA AVENUE FUNDS,
On Behalf of Itself and All Others Similarly
Situated,

        Plaintiff,

    vs.

EDWARD J. BOREY, STEVEN N. MOORE,
MICHAEL R. KOUREY, MICHAEL R.
HALLMAN, RICHARD A. LeFAIVRE, WILLIAM
J. SCHROEDER, FRANCISCO PARTNERS, L.P.,
GLADIATOR CORPORATION, FRANCISCO
PARTNERS II, L.P., FRANCISCO PARTNERS
PARALLEL FUND II, L.P., VECTOR CAPITAL
CORPORATION, VECTOR CAPITAL III, L.P.,
ALEXANDER R. SLUSKY, DAVID STANTON,
DIPANJAN DEB,

        Defendants.

Civil Action No. **CV6 · 1737**B

VERIFIED COMPLAINT BASED
UPON SELF-DEALING AND
BREACH OF FIDUCIARY DUTIES
AND FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS
AND ANTI-COMPETITIVE
BEHAVIOR

**CLASS ACTION COMPLAINT**

**JURY TRIAL REQUESTED**



**06-CV-01737-CMP**

1

## INTRODUCTION

2    1.    This is a shareholder class action brought to remedy the breaches of fiduciary duty

3   rising out of the refusal of the directors of WatchGuard Technologies, Inc. ("WatchGuard" or the

4   "Company") to act reasonably or in good faith in response to deteriorating business prospects and

5   concurrent, collusive offers to purchase the Company for an amount and on terms unfavorable to the

6   shareholders but favorable to the Defendants that controlled WatchGuard.  This action also seeks

7   to remedy breaches of Section 1 of the Sherman Act, 15 U.S.C. § 1, that occurred in connection with

8   the transaction and arising out of the actions by private equity buyout defendants Francisco Partners

9   and Vector Capital Corporation that worked in tandem to avert competition and, instead, set the sales

10   price for Watchguard shares.

11    2.    WatchGuard is a Seattle-based utility and internet security company. WatchGuard's

12   directors (the "Director Defendants") have refused to act in the best interests of the Company's

13   shareholders and instead acted at critical times to perpetuate their control of WatchGuard in order

14   to continue receiving the substantial monetary and non-monetary perquisites and emoluments of their

15   positions as senior management and/or insiders of WatchGuard.    The Director Defendants

16   compounded their breaches of fiduciary duty by assisting, conspiring, or negligently allowing the

17   coalition of suitors to bid down the deal prices offered to shareholders in a going private transaction

18   when it became apparent that sale of the Company was imminent following shareholder rejection

19   of a poison pill. Plaintiff seeks to hold the Director Defendants responsible for the harm caused to

20   WatchGuard's public shareholders, in failing to fulfill their fiduciary responsibilities as directors,

21   including the duty to: act in a fair manner and reasonably respond to offers for the sale of the

22   Company, maximize shareholder value, by preventing the activities of the Private Equity Defendants,

23   negotiate in good faith, and otherwise enact provisions or take actions calculated to: maximize

24   shareholder value and/or prevent the dissipation of valuable WatchGuard assets to the detriment of

25   the public shareholders.

26

27

28   VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL  NO:  619/238-1333

PAGE: 2

1    3.    The sale of WatchGuard was characterized by a collusive bidding scheme that went
2    unchallenged, a process known to regulators as a "club deal", whereby the Private Equity Defendants
3    communicated and conspired, separately and/or together with the Director Defendants, to avoid
4    competitive bidding and instead reach a secret agreement having the effect of keeping the sale price
5    of WatchGuard insulated from a competitive bidding process. As a result, the public shareholders
6    of WatchGuard have been deprived of the true economic value of their holdings and "squeezed out"
7    at an artificially low price.

8                           **BACKGROUND TO THE WATCHGUARD SALE**

9    4.    Since at least mid-2005, shareholders of Watch Guard had become increasingly
10   frustrated with Company management and its business execution, and the Director Defendants were
11   under fire for the Company's poor performance. As early as October 2005, the Director Defendants
12   were receiving acquisition solicitations from potential partners that the Director Defendants never
13   identified to stockholders until after the fact, or in proxy solicitations where referred to as
14   "Compan[ies]" "A", "B", "C", "D", "E", and "F". Instead of discharging their fiduciary duties by
15   soliciting and encouraging these and other offers to purchase WatchGuard, and otherwise act to
16   maintain a level playing field designed to maximize shareholder value in connection with the
17   Company's sale, the Director Defendants executed non-disclosure and standstill agreements with
18   these undisclosed suitors.

19   5.    By early 2006, shareholders owning large blocks of Company stock were calling for
20   a change in management and ownership of the Company when, on or about February 17, 2006,
21   Private Equity Defendant Francisco Partners ("FP") made an initial offer to purchase WatchGuard
22   for cash consideration of between $5.00 and $5.50 per share. On the same day, on or about February
23   17, the other Private Equity Defendant Vector Capital Corporation ("Vector"), offered to purchase
24   the Company for a "substantial premium" to the market price of the Company's publicly traded
25   stock. On May 26, 2006 Vector made a concrete offer of $5.10 per share. Despite these initial offers
26   at or above $5.10 per share, and signals of a willingness to bid higher, the deal to sell Watchguard
27   closed at $4.25 per share, an 18% decrease from earlier offers by ostensibly competing suitors. This

28   VERIFIED COMPLAINT BASED UPON SELF-DEALING                          FINKELSTEIN & KRINSK, LLP
     AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF             501 WEST BROADWAY, SUITE 1250
     THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.                SAN DIEGO, CA 92101
                                                                           TEL    NO:    619/238-1333

PAGE 3

1    is the opposite of free market logic.

2        6.    In breach of their fiduciary duty of candor, the Director Defendants first disclosed the
3    existence of these offers to acquire WatchGuard in their August 21, 2006 Preliminary Proxy
4    Statement requesting shareholders to ratify the sale of WatchGuard for $4.25 per share. The delay
5    was timed to allow the Director Defendants to avoid meaningful negotiation of the FP and Vector
6    offers, keep these offers secret, avoid the dynamic of a competitive and open market bidding process,
7    and instead conceal material fact from shareholders until after a May 2006 shareholder vote which
8    would result, if passed, in entrenching the Director Defendants by the shareholders ratifying a
9    shareholder rights plan (i.e. "poison pill"). The poison pill would have prevented an offer for the
10    Company from being consummated without the personal approval of the Director Defendants.

11        7.    With the Director Defendants not responding in a meaningful manner to its February
12    2006 offer, Vector publicly announced via a March 23, 2006 Securities and Exchange Commission
13    ("SEC") filing that it had made an offer to the Director Defendants weeks earlier. Vector thus
14    thwarted the Director Defendants' efforts to control offers from Vector by non-disclosure.

15        8.    The Director Defendants responded to Vector's public disclosure, in violation of their
16    fiduciary duties, by reviewing the proposal in a perfunctory manner, failing to perform due diligence,
17    or otherwise be informed about the offeror, failing to negotiate proper safeguards to ensure the
18    offer's availability, and announcing on the eve of the shareholder vote, that they had hired a financial
19    advisor to assist in a "strategic review process". Shareholders recognized this as a sham maneuver
20    and voted against adoption of the poison pill on May 4, 2006.

21        9.    Undeterred, the Director Defendants continued to further their personal agendas and
22    failed to respond in good faith or with prudence to Vector's offer to purchase the Company, failed
23    to negotiate a sale of the Company to Vector, failed to allow an open and inviting bidding process,
24    and failed to otherwise act to maximize shareholder value (excepting former director Ellen Hancock
25    ("Hancock"), who resigned from the Board effective May 4, 2006). Instead, the Director Defendants
26    precipitously allowed a merger agreement with a non-competitive consortium comprised of
27    Francisco Partners and (according to proxy materials *later* joined by) Vector (the "FP Merger"),

28    VERIFIED COMPLAINT BASED UPON SELF-DEALING                                    FINKELSTEIN & KRINSK, LLP
     AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF                         501 WEST BROADWAY, SUITE 1250
     THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.                       SAN DIEGO, CA 92101
                                                                                    TEL  NO:  619/238-1333

PAGE 4

1  resulting in a price per share significantly lower than earlier offers by FP, Vector and other suitors.
2  Director Defendants' objective was personal gain.

3      10.    The Director Defendants were required to discharge their fiduciary duties and not
4  compound the harm caused to WatchGuard's shareholders. To satisfy these responsibilities, the
5  Director Defendants should have engaged in good faith negotiations and made public disclosure of
6  Vector's interest and acted to preserve its offer while soliciting and encouraging other alternatives.
7  The Director Defendants should also have acted to maintain a level playing field designed to
8  maximize shareholder value in connection with the Company's sale. The situation presented a
9  unique opportunity for the Director Defendants to maximize value for WatchGuard's public
10 stockholders, an opportunity now disappeared because of the Director Defendants' improper
11 behavior. Instead, the Director Defendants pursued their personal interests and received significant
12 benefits following consummation of the FP Merger on October 4, 2006. To this end, the Director
13 Defendants implemented lock-up and support agreements and allowed a termination fee provision
14 to be negotiated that chilled the opportunity for additional or greater offers, and prevented a fair and
15 open sale process.

16     11.    By means of the lock-up and support agreements, and termination fee provisions, the
17 Director Defendants contracted, combined or conspired with the Private Equity Defendants to sell,
18 or allow the sale of WatchGuard equity shares at artificially low prices caused by the involvement
19 and/or complicity of all the Defendants.

20     12.    In furtherance of the combination and conspiracy to sell WatchGuard shares at an
21 artificially low price, Defendant Vector and Vector CEO Alexander R. Slusky agreed to vote
22 3,247,500 shares of WatchGuard stock, comprising 9.4% of common shares outstanding, in favor
23 of the FP Merger, all shares having been purchased only days prior, between January and March
24 2006, the months leading up to the FP Merger.

25
26
27

28 VERIFIED COMPLAINT BASED UPON SELF-DEALING                                    FINKELSTEIN & KRINSK, LLP
   AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF                   501 WEST BROADWAY, SUITE 1250
   THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.                     SAN DIEGO, CA 92101
                                                                            TEL  NO:  619/238-1333

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over Defendants because they conduct business in Washington and/or are citizens of the State of Washington, and under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiffs and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

14.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

15.    (a)    Venue is found in this district pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26, and 28 U.S.C. § 1391(b), (c) and (d).  Venue is proper in this judicial district because one or more of the Defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.

(b)    Francisco Partners and Vector Capital Corporation, the Private Equity Defendants, on information and belief, maintain offices, have agents, transact business, or are found within this judicial district.

(c)    WatchGuard's principal place of business is located at 505 Fifth Avenue South, Suite 500, Seattle, Washington and certain of the Director Defendants (including Edward J. Borey) are residents and citizens of the State of Washington.

16.    This Court has in personam jurisdiction over each of the Defendants because each was engaged in an illegal scheme and/or price-fixing and anti-competitive conspiracy that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States.

VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL NO: 619/238-1333

PAGE 6

**PARTIES**

17.    Non-party WatchGuard is a Delaware corporation that at all times material maintained its corporate headquarters in Seattle, Washington.  WatchGuard provides internet security solutions to enterprises that use the internet for e-commerce and secure communications worldwide.

18.    Plaintiff Pennsylvania Avenue Funds, a Delaware statutory trust, headquartered at 4201 Massachusetts Ave. NW, Suite 8037C, Washington DC, 20016 is, and at all times relevant hereto was, a shareholder of WatchGuard holding approximately 7000 shares at the closing of the FP Merger.

19.    Defendant Edward J. Borey ("Borey") was, prior to the October 4, 2006 FP Merger, Chairman of the Board and Chief Executive Officer of the Company.

20.    Defendant Steven N. Moore ("Moore") co-founded WatchGuard in February 1996 and served as a director since inception and until the October 4, 2006 FP Merger. Moore has served as: chairman of the board, chief executive officer, and president of WatchGuard from December 2003 through June 2004 and as corporate secretary from inception through February 2004.  Mr. Moore served as executive vice-president of strategic financial operations of WatchGuard from October 2000 to June 2003, as chief financial officer and treasurer of WatchGuard from inception to October 2000, as executive vice-president of finance from March 1999 to October 2000 and as vice-president of finance and operations from inception to March 1999.

21.    Defendant Michael R. Kourey ("Kourey") was a director of the Company from April 2003 until the October 4, 2006 FP Merger.

22.    Defendant Michael R. Hallman ("Hallman") was a director of the Company from November 2000 until the October 4, 2006 FP Merger.

23.    Defendant Richard A. LeFaivre ("LeFaivre") was a director of the Company from April 2003 until the October 4, 2006 FP Merger.

24.    Defendant William J. Schroeder ("Schroeder") was a director of the Company from April 2002 until the October 4, 2006 FP Merger.

VERIFIED COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL NO· 619/238-1333

PAGE 7

1    25.    The Defendants named above in ¶¶19-24 are herein collectively referred to as the
2    "Director Defendants".

3    26.    Defendant Francisco Partners, L.P. ("FP") is a private equity firm organized as a
4    Delaware limited partnership, that at all times material maintained its corporate office at 2882 Sand
5    Hill Road, Suite 280, Menlo Park, CA 94025, and is the parent entity of Defendants Gladiator
6    Corporation, Francisco Partners II, L.P., and Francisco Partners Parallel Fund II, L.P.

7    27.    Defendant Gladiator Corporation ("Gladiator") is a FP affiliate company organized
8    as a Delaware corporation formed solely for the purpose of entering into the FP Merger with
9    WatchGuard.

10   28.    Defendant Francisco Partners II, L.P. ("FP II") is a FP affiliate company organized
11   as a Delaware limited partnership that agreed to contribute cash to Gladiator to pay a portion of the
12   aggregate FP Merger consideration.

13   29.    Defendant Francisco Partners Parallel Fund II, L.P. ("FP Parallel") is a FP affiliate
14   company organized as a Delaware limited partnership that agreed to contribute cash to Gladiator to
15   pay a portion of the aggregate FP Merger consideration.

16   30.    Defendant Vector Capital Corporation ("Vector") is a private equity firm organized
17   as a Delaware corporation, that at all times material maintained its corporate office at 456
18   Montgomery Street, 19th Floor, San Francisco, CA 94104, and is the parent entity of Defendant
19   Vector Capital III, L.P.

20   31.    Defendant Vector Capital III, L.P. ("Vector III") is a Vector affiliate company
21   organized as a Delaware limited partnership that contributed consideration for the FP Merger on
22   behalf of Defendant Vector.

23   32.    Defendant Alexander R. Slusky ("Slusky") is the founder and managing partner of
24   Vector Capital.

25   33.    Defendant David Stanton ("Stanton") is a founder of Francisco Partners and has been
26   its Managing Partner since its formation in August 1999.

27   34.    Defendant Dipanjan Deb ("Deb") is a founder and Managing Partner of Francisco

28   VERIFIED COMPLAINT BASED UPON SELF-DEALING
     AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
     THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL   NO:   619/238-1333

PAGE 8

1    Partners and has been a Partner since its formation in August 1999.

2        35.    The Defendants named above in ¶¶26-34 are herein collectively referred to as the

3    "Private Equity Defendants".

4                          **DEFENDANTS' UNLAWFUL CONDUCT**

5        36.    WatchGuard is a provider of internet security solutions that are designed to protect

6    small to medium-sized businesses in using the internet for e-commerce and secure communications.

7    The Company went public in July 1999 at $13.00 per share, peaking at a price of over $120 per share

8    in 2000 before falling precipitously; by 2002 WatchGuard stock had plummeted to a single digit

9    price per share.

10       37.    Under the Director Defendants' stewardship, the Company lost money year after year.

11   Over the past six quarters WatchGuard has seen its revenues steadily decline. Understandably,

12   shareholders became increasingly frustrated with the performance and capabilities of the Director

13   Defendants and pressure percolated to not only replace the Director Defendants and sever them from

14   their lucrative and prestigious positions, but for the Director Defendants to discharge their fiduciary

15   duties and safeguard assets in order to maximize shareholder value.

16       38.    By mid 2005, desultory financial results and a failed operational direction for the

17   Company under the Director Defendants' governance caused inquiries from potential strategic

18   partners/investors, including Vector, to surface, with interest directed at a potential merger or

19   acquisition. For example, the Director Defendants were receiving acquisition solicitations from, and

20   conducting negotiations with unnamed strategic partners, disclosed to stockholders after the fact in

21   proxy solicitations that identified the suitors as "Compan[ies]" "A", "B", "C", "D", "E", and "F".

22   In addition, on or about October 6, 2005, an investor that the Director Defendants failed and refused

23   to identify, expressed interest in a stock-for-stock exchange with WatchGuard for a price per share

24   of between $5.00 and $5.50 per share. In fact, the Director Defendants' proxy materials indicate that

25   discussions and negotiations between the Director Defendants' and the above listed suitors (and

26   others) was extensive, in depth, and presented many opportunities from at least August 2005 until

27   the FP Merger was announced. By the end of 2005, the Director Defendants knew or were negligent

28   VERIFIED COMPLAINT BASED UPON SELF-DEALING                          FINKELSTEIN & KRINSK, LLP
     AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF             501 WEST BROADWAY, SUITE 1250
     THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.        SAN DIEGO, CA 92101
                                                                       TEL NO: 619/238-1333

     PAGE 9

1  in not knowing, that it was an opportune time to sell WatchGuard and solicit offers for that purpose,

2  there being a heightened and growing interest in acquiring WatchGuard's assets. Despite the

3  beneficial financial implications to WatchGuard shareholders of being "in play" as an acquisition

4  target, no public disclosure or public announcement was made and the opportunity to encourage or

5  facilitate a competitive bidding process was squandered.

6      39.     Thereafter, on or about February 17, 2006, the Director Defendants received a cash

7  proposal from Francisco Partners expressing interest in acquiring WatchGuard for a cash price of

8  between $5.00 and $5.50 per share. The Director Defendants did not disclose the February 17 offer,

9  first disclosing it in FP Merger proxy solicitations. Also on February 17, 2006, Vector, one of the

10  Company's largest shareholders, sent a letter to the Director Defendants proposing to acquire the

11  Company. The letter stated:

12      **VIA E-MAIL AND FEDERAL EXPRESS**

13      The Board of Directors of WatchGuard Technologies, Inc.
        c/o Edward J. Borey, CEO
14      WatchGuard Technologies, Inc.
        505 Fifth Avenue South, Suite 500
15      Seattle, WA 98104

16      Dear Members of the Board of Directors:

17          We would like to express our strong interest in acquiring WatchGuard
        Technologies, Inc. (The "Company") via an all-cash merger or tender offer that
18      would provide a significant premium to your current shareholders. Vector Capital
        Corporation (with its affiliates, "Vector") is a technology private equity boutique
19      specializing in buyouts, spinouts and recapitalization of established technology
        businesses. We have become very familiar with the Company through publicly
20      available sources and numerous conversations with those knowledgeable about the
        Company and its competitors. We have formed a fundamental investment thesis
21      regarding the Company's potential in the enterprise security solution sector and have
        become a significant shareholder of the Company. It now appears clear, however,
22      that the Company's status as a sub-scale public company is preventing WatchGuard
        from achieving its potential.
23
            The Company's shareholders, employees, and customers would all benefit
24      from Vector's acquisition of the Company. In addition to delivering a value-
        maximizing premium to current shareholders, such a transaction would relieve all
25      stakeholders from the ongoing risks and costs associated with the hostile
        environment for small, publicly-traded technology companies. Finally, as a well-
26      capitalized, nimble private company, WatchGuard could more effectively pursue its
        strategic objectives. We believe that the case in favor of this course of action is
27      compelling and is virtually demanded by the Company's present circumstances.

28  VERIFIED COMPLAINT BASED UPON SELF-DEALING                    FINKELSTEIN & KRINSK, LLP
    AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF         501 WEST BROADWAY, SUITE 1250
    THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.        SAN DIEGO, CA 92101
                                                                  TEL  NO:  619/238-1333

    PAGE 10

1

2    We are deeply concerned that there may already be a board-initiated process,
     or other initiative being pursued, to sell the Company without our involvement. In
3    particular, market rumors suggest that Wachovia Securities has already begun to
     contact potential buyers. If true, we feel it appropriate – and likely mandated by the
4    Board's fiduciary duties – to immediately include us in that process and afford us the
     same access to information and management that is being afforded to other
5    participants. If our information is not accurate, please confirm to us that investment
     bankers have not been engaged and that no sales process is being considered.

6    In either event, we request a prompt meeting with the Board to explain our
     investment philosophy, our concerns with the Company's present direction and our
7    proposed value-maximizing alternative. As we have demonstrated in our recent
     acquisitions of Register.com and Corel Corporation, we have significant experience
8    completing transactions that fairly balance the interests of public shareholders and
     those of the post-transaction stakeholders.

9    Please call me at (415) 293-5005 at your earliest convenience to arrange our
     meeting with the Board.

10
     Very truly yours,
11
     Alexander R. Slusky,
12   President

13    40.    Though representing that Vector would pay a "value maximizing premium to current

14   shareholders", the Director Defendants did not publicly disclose either the activities of FP or Vector

15   in generic form or otherwise. In May 2005, the Director Defendants had enacted a poison pill that

16   allowed the Director Defendants to perpetuate their positions and control the Company. The

17   Director Defendants hoped that not disclosing acquisition interest in WatchGuard would cause the

18   Company's shareholders to ratify this poison pill at a May 2006 annual meeting. The Director

19   Defendants knew that if shareholders were aware of offers for WatchGuard, sophisticated investors

20   would vote down the poison pill, recognizing it as an impediment to gaining the highest price per

21   share.

22    41.    With weeks passing since its offer, and with the annual shareholder meeting rapidly

23   approaching, Vector felt obligated to publicly announce its February 2006 offer to acquire

24   WatchGuard and did so via a March 23, 2006 SEC filing.

25    42.    Shareholder and analyst sentiment immediately coalesced around pursuing the Vector

26   transaction. The Director Defendants continued to frustrate this obvious advantage, failing to

27   effectively engage and otherwise acting ineffectively against a backdrop of shareholder opportunity.

28   VERIFIED COMPLAINT BASED UPON SELF-DEALING                    FINKELSTEIN & KRINSK, LLP
     AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF         501 WEST BROADWAY, SUITE 1250
     THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.       SAN DIEGO, CA 92101
                                                                  TEL  NO:  619/238-1333

     PAGE 11

1  Neither a market check or solicitation of open bidding ensued, the Director Defendants instead
2  urging the Company's shareholders to ratify the 2005 poison pill.

3      43.  While pressure mounted for the Director Defendants to pursue a change of direction
4  and reconfigure the Company (including a move to take the Company private), the Director
5  Defendants instead adopted an executive bonus package for 2006. This package, the benefits of
6  which were fully vested upon closing the FP Merger, conferred significant benefits on Defendant
7  Borcy and other senior members of WatchGuard management.

8      44.  On April 24, 2006, on the eve of the shareholder vote to ratify the poison pill, the
9  Director Defendants announced that they had hired Wachovia Securities ("Wachovia") as a financial
10  advisor to assist in the evaluation of strategic alternatives. This maneuver was designed to encourage
11  shareholders to ratify the poison pill. Wachovia Securities had been retained as a consultant by the
12  Company since 1995 but was never given carte blanche to maximize shareholder returns for
13  WatchGuard or pursue an unfettered plan to accomplish this during propitious times.

14      45.  The March 23, 2006 SEC filing by Vector caused WatchGuard's shareholders to be
15  increasingly aggressive in expressing their dissatisfaction with the Director Defendants' actions. For
16  example, on May 3, 2006, another large WatchGuard shareholder, SACC Partners LP, issued a press
17  release containing a letter it earlier sent to the Director Defendants but not publicly disclosed:

18      The Board of Directors of WatchGuard Technologies, Inc.
    WatchGuard Technologies, Inc.
19      505 Fifth Avenue South, Suite 500
    Seattle, WA 98104
20
    Members of the Board of Directors:
21
22      As you are aware, SACC Partners, LP has been a shareholder of WatchGuard
    (WGRD) for the past two years having acquired approximately 2% of the outstanding
    shares. As a large shareholder and a proud user of several WatchGuard Firebox
23      Core, SOHO and Firebox Edge appliances, we are excited about the opportunities in
    front of the Company. That said, however, we have been very disappointed with the
24      financial performance of the Company over the past few years. Thus, we were
    encouraged to learn that Vector Capital Corporation ("Vector") has expressed an
25      interest in acquiring WatchGuard as indicated in a letter from Vector, dated February
    17, 2006 and disclosed in a recent 13-D filing. While we are encouraged by your
26      recent hiring of Wachovia to review strategic alternatives, we want to emphasize to
    you that we are strongly against your proposal to put a Rights Agreement in place at
27      the annual meeting scheduled to take place Thursday, May 4th. We agree with ISS

28  VERIFIED COMPLAINT BASED UPON SELF-DEALING                           FINKELSTEIN & KRINSK, LLP
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF           501 WEST BROADWAY, SUITE 1250
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.        SAN DIEGO, CA 92101
                                                              TEL  NO:  619/238-1333

PAGE 12

that having a poison pill in place is NOT in the best interest of shareholders as it entrenches management and the board and discourages legitimate suitors from pursuing an acquisition of the Company. Therefore, we have submitted our vote AGAINST the Rights Agreement.

Over the past year, WatchGuard's execution has been poor and we have not seen any material progress in the "eighteen-month turnaround" program, which was initiated soon after the Company hired its current CEO and Chairman. The company has shown five straight quarters of declining revenues (year-over-year) and the Company generated its tenth year of operating losses since its inception in 1996. In our opinion, WatchGuard's performance has simply been unacceptable.

Additionally, we have been disappointed in the Company's lack of a buyback program over the last year and a half. You have publicly stated that acquisitions are not in your long-term plan and that the Company and shareholders would be rewarded by focusing on improving operations. However, you have refrained from a share buyback despite exiting the 4th quarter with $77.8 million in cash and a relatively small cash burn. Given your apparent lack of need for cash and your belief that a focus on operations will result in stronger profitability we are disappointed that you have refrained from repurchasing shares even when the company's enterprise value, based on share prices in the market, has fallen to as low as $30 million dollars.

While we believe there are significant growth opportunities in the IT Security market overall, we are concerned that increasing competition as well as the costs of being a public company will limit WatchGuard's growth potential in both the near-term and long-term. Given how fragmented the IT Security industry is, especially as it relates to UTM providers, we believe that consolidation is inevitable and we have indicated many times that we believe WatchGuard would make a compelling acquisition target for a strategic or financial buyer. We also believe strongly that your size and growth prospects make it difficult to be a profitable public company given the costs associated with being public. For example, selling to a private company would result in the streamlining of executive management, removal of Board fees and related costs including D & O insurance, rationalization of sales and research as well as auditing costs to name a few. Whether a purchase by Vector or a purchase by a competitor, we believe that the timing is appropriate and that you should aggressively pursue this opportunity. We agree with Vector that as a nimble private company WatchGuard could more effectively pursue its strategic objectives. Thus, we urge you to seriously consider Vector's offer and pursue a sale of the Company sooner rather than later (*emphasis added*).

Regards,

Bryant Riley
Founder & General Partner
SACC Partners, LP

46. The Director Defendants failed to effectively respond or act consistent with the above plea or their fiduciary duties.

---

VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL  NO:  619/238-1333

PAGE 13

1   47.   On May 4, 2006, WatchGuard's shareholders exhibited their distaste for the Director

2   Defendants' actions and voted down the poison pill recommended by the Director Defendants.

3   48.   In response to the rebuke and the clear counsel of the shareholders the Director

4   Defendants still refused to engage in competent, responsible, fair and open negotiations to sell the

5   Company, its assets, or otherwise maximize shareholder value until there arose terms personally

6   beneficial to the Director Defendants.

7   49.   On May 31, 2006, Vector publicly disclosed that it earlier offered to purchase

8   WatchGuard for $5.10 per share in cash through a statutory merger. This purportedly represented

9   a 35% premium to the trading price of the stock on the day preceding Vector's (May 26, 2006 letter)

10  presenting the $5.10 offer. The letter stated *inter alia*, that "[w]e believe... the best course for

11  WatchGuard shareholders is a cash transaction at a meaningful premium." (*emphasis added*).

12  Significantly, Vector's offer was not contingent on third party financing or third party approvals, and

13  had been approved by Vector's investment committee. The offer "sheet" stated that a merger

14  agreement could be reached expeditiously.

15  50.   The Director Defendant's reaction included neither commencing negotiation to bind

16  Vector's offer or to publicize the process to precipitate a broad and open bidding process.

17  51.   With a $5.10 initial offer effectively on the table and the sale of WatchGuard

18  imminent following the May 4, 2006 shareholder vote, the Director Defendants delayed an open

19  process to achieve personal benefit to the detriment of the shareholder.

20  52.   The Director Defendants activities thereupon allowed, permitted and/or assisted

21  Vector, in conjunction with the contract, combination and conspiracy herein alleged, to then lower

22  it's offer per share to $4.65, and then did nothing to prevent the $4.25 per share offer by Francisco

23  Partners to proceed though in furtherance of the anti-competitive contract, combination or

24  conspiracy herein alleged.

25  53.   The July 25, 2006 announcement of the Defendant Directors' acceptance of $4.25 for

26  each WatchGuard share, stunning in itself given the pendency of a significantly higher initial offer,

27  was incomprehensible given the many opportunities of the Director Defendants to pursue or

28  VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL NO: 619/238-1333

PAGE 14

1   encourage multiple bidders that had surfaced as competing suitors and, at least, ensure recourse to
2   the $5.10 offer by Vector. The Director Defendants failed to maximize shareholder value, impeded
3   the sales process by artificially limiting the number of prospects placed unreasonable conditions on
4   various prospects, failed to stay informed of material events, and abdicated their fiduciary
5   responsibility by disloyalty and lack of care. Some prospective bidders were driven off as the
6   Director Defendants brokered and/or encouraged, and/or failed to prevent formation of a coalition
7   between Vector and Francisco Partners, though clearly improper, that allowed a lower, joint bid and
8   the certainty of future personal benefits to the Director Defendants. Unsurprisingly, FP's offer,
9   insulated from competitive dynamics, adversely affected by the anti-competitive practice herein
10  alleged, decreased to $4.25 per share! The Director Defendants' breaches of fiduciary duties
11  combined with the Private Equity Defendants' anti-competitive conduct effectively forced
12  WatchGuard shareholder approval of the FP Merger on October 4, 2006.

13      54.    Prior to that date, on August 16, 2006, the Private Equity Defendants formalized their
14  previous agreement, combination and conspiracy to purchase WatchGuard through a cooperative
15  arrangement intended to avoid price competition. In a letter agreement ("Letter Agreement")
16  between Defendant Vector III and Defendant Gladiator obligated Vector III to: a) fund Gladiator for
17  the purpose of completing the FP Merger at the diminished price and b) vote Vector III's shares,
18  representing 9.4 percent of the WatchGuard shares outstanding, in favor of the FP Merger.

19      55.    When the Letter Agreement was finalized, Vector issued a press release stating that
20  "Francisco Partners and Vector Capital Team Up in Acquisition of WatchGuard Technologies", an
21  admission of their joint carving of WatchGuard assets.

22      56.    In derogation of their fiduciary duties the Director Defendants conducted no due
23  diligence, and/or did not disclose any due diligence on their part. The Director Defendants stated
24  their fiduciary obligations were satisfied by hiring Wachovia to determine whether the FP Merger
25  was fair "from a financial point of view". Wachovia "[r]eviewed","[c]onsidered" and "[c]ompared"
26  a number of mostly public materials, "[p]articipated in discussions" regarding the FP Merger, but
27  was not requested to, and did not perform any meaningful valuation of the Company or its assets,

28  VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

1    or analyze the deal metrics given the burgeoning competition for WatchGuard's assets. This failure
2    to act or perform due diligence was particularly egregious in light of the fact that the Director
3    Defendants' stated reason for FP's declining offer was that due diligence *by FP*, not others, justified
4    a lower price. The Director Defendants were required to act with care and undertake independent
5    analysis of the deal metrics on behalf of the shareholders and confirm FP's allegation that
6    WatchGuard was suddenly worth but $4.25 per share.

7        57.    The resulting FP Merger transaction included the Defendant Directors enacting
8    provisions to discourage and/or prevent alternative deals from surfacing. These provisions included:
9    a) $6 million ($6,000,000) fee payable by WatchGuard to Vector/FP affiliates in the event the
10   agreement of merger was terminated by a competing transaction; b) a lock-up provision that required
11   *inter alia*, immediate cessation of discussions, negotiations or communications with respect to any
12   prospective competing transaction, and which prevented any WatchGuard affiliate, employee or
13   associate from soliciting, encouraging, or facilitating a competing transaction; c) support agreements
14   pursuant to which each of the Director Defendants was required to and did vote the shares owned
15   in favor of the FP Merger; and d) an acknowledgment that attempted termination of the FP Merger
16   agreement would constitute "irreparable harm", thus entitling the Private Equity Defendants to
17   specific performance and cause a competing offer to face a mandatory injunction.

18       58.    By reason of their positions with WatchGuard, the Director Defendants were
19   obligated to act in accordance with the fiduciary duties of good faith loyalty, care and fair dealing,
20   placing the interest of shareholders first. As fiduciaries of a publicly traded company, the Director
21   Defendants were required to act fairly to consider/encourage bona fide offers and not act in a manner
22   discouraging alternative and higher bids.

23       59.    By reason of their positions with WatchGuard, the Director Defendants were
24   obligated to act consistent with their fiduciary duties of good faith, due care, and fair dealing and not
25   place personal benefit and opportunity for wealth and/or prestige above the interest of their
26   shareholders. As fiduciaries of a publicly traded company, the Director Defendants were obligated
27   to act carefully to consider, encourage and pursue bona fide offers benefitting the public shareholders

28   VERIFIED COMPLAINT BASED UPON SELF-DEALING                                FINKELSTEIN & KRINSK, LLP
     AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF                    501 WEST BROADWAY, SUITE 1250
     THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.                  SAN DIEGO, CA 92101
                                                                               TEL. NO:  619/238-1333

PAGE 16

1  of the Company and not disregard, or unreasonably qualify offers or otherwise abdicate the duties
2  and requirements of board members.

3   60.   As a result of the FP Merger, the Directors Defendants' options for WatchGuard
4  common stock have been fully accelerated regardless of the time specified for the option grant to
5  vest. All shares of restricted stock previously issued to the Director Defendants became fully vested.
6  The FP Merger agreement provided for continued indemnification of the Director Defendants and
7  continuation of Directors and Officers Insurance for six years. Defendant Borey, upon termination
8  or resignation within 18 months of WatchGuard's sale will receive 200% his annual salary and 100%
9  of the accrued amount of his target bonus, plus benefits including tax restoration payments and
10 insurance coverage. If Defendant Sparks is terminated or resigns within 18 months following the
11 sale of WatchGuard he will receive 100% his annual salary as well.

12  61.   The FP Merger was consummated on October 4, 2006. The entire Watchguard board
13 was replaced, triggering the Director Defendants entitlement to the financial benefits packages
14 described above.

15  62.   The Director Defendants' unlawful actions resulted in Plaintiff and the other members
16 of the Class being harmed in not realizing a higher or better value that was available in the sale of
17 WatchGuard and the Director Defendants allowing, if not abetting, the violations of law by the
18 Private Equity Defendants.

19       **BACKGROUND AND ALLEGATIONS**
         **AGAINST THE PRIVATE EQUITY DEFENDANTS**
20

21  63.   Defendants Francisco Partners (including its various partnerships) and Vector
22 Partners (including its various partnerships) are in the private equity business. This business is
23 experiencing unparalleled growth. According to an October 30, 2006 article in *BusinessWeek,* nearly
24 $159 billion has poured into private equity funds this year alone, compared to $41 billion in all of
25 2003. Annual returns on the funds average approximately 20%.

26  64.   The private equity community is tightly knit, trying to shield its inner workings and
27 methods from the press. The effort to remain out of the public eye, however, has not deterred the

VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL  NO:  619/238-1333

PAGE 17

1    Department of Justice from starting to investigate potential collusion by these firms. Specifically,
2    in October 2006, news reports confirmed that DOJ has initiated an investigation by sending letters
3    of inquiry to major players in the industry. The investigation is reportedly focused on transaction
4    involving the popular practice called "club deals". This is when private equity groups team up with
5    one another to buy companies as occurred with WatchGuard. According to industry experts, as
6    reported in the October 13, 2006 edition of the *Financial Times*, DOJ is investigating private equity
7    firms' collusion and bid-rigging. In particular, DOJ is focused on whether the private equity
8    "players" – club members – worked together to establish prices and the value of bids in order to keep
9    the target's price low. These practices impede the target (i.e., WatchGuard) from running a fully
10   competitive auction and realizing maximum value for stockholders.

11   65.    Private equity funds are the pools of capital invested by private equity firms like the
12   Private Equity Defendants. The funds operated by the Private Equity Defendants are generally
13   organized as limited partnerships, which are controlled by the private equity firm. The Private
14   Equity Defendants use their pools of capital to bid for control of a company, as occurred with
15   WatchGuard, in what is often termed a "going private transaction". In the context of the "going
16   private transaction" for WatchGuard, the Private Equity Defendants agreed that they would jointly
17   proceed to a definitive acquisition of WatchGuard and that the Private Equity Defendants would not
18   submit competing bids or take other action that might make it more difficult for the group to acquire
19   the target at the lowest possible price. The Private Equity Defendants communicate and share price
20   information in order to proceed.

21                                  **CLASS ALLEGATIONS**

22   66.    Plaintiff brings this action on its own behalf and as a class action. The class Plaintiff
23   represents is comprised of: WatchGuard public shareholders that sold their shares pursuant to the
24   FP Merger as described herein (the "Class"). Excluded from the Class are Defendants herein and
25   any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

26   67.    This action is properly maintainable as a class action.

27

28   VERIFIED COMPLAINT BASED UPON SELF-DEALING                          FINKELSTEIN & KRINSK, LLP
     AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF                501 WEST BROADWAY, SUITE 1250
     THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.          SAN DIEGO, CA 92101
                                                                        TEL  NO:   619/238-1333

     PAGE 18

1    68.    The Class is so numerous that joinder of all members is impracticable.  According

2  to WatchGuard's SEC filings, there were nearly 35 million shares of WatchGuard common stock

3  outstanding as of March 2006 among a diverse shareholder base.

4    69.    There are questions of law and fact which are common to the Class and which

5  predominate over questions affecting any individual Class member.

6        (a)    whether the Director Defendants have breached their fiduciary duties of

7  undivided loyalty, independence and/or due care with respect to Plaintiff and the other members of

8  the Class by their activities concerning the disposition of WatchGuard including their failure to act

9  in good faith, properly solicit or safeguard offers for WatchGuard, and failure to preserve

10 WatchGuard assets;

11       (b)    whether the Director Defendants failed to be, or stay, informed about the

12 progress of negotiations, and thereby unable to encourage alternative offers and/or initiate a fair and

13 competitive process for the sale of WatchGuard assets at the expense of shareholder best interests;

14       (c)    whether the Director Defendants attempted to perpetuate governance, to

15 preserve lucrative and prestigious prerequisites to the detriment of shareholder interests and, among

16 other things, failed to properly consider, encourage, negotiate and manage various good faith offers

17 and opportunities for Company assets;

18       (d)    whether the Director Defendants breached their fiduciary duties by negotiating

19 with, and/or allowing the "coalition offer" from FP and Vector thereby causing or negligently

20 allowing the price to decrease as a result of the collusion by the Private Equity Defendants;

21       (e)    whether the Director Defendants were influenced by or allowed personal

22 financial or other benefit to be a factor in the FP Merger negotiations and agreement;

23       (f)    whether the Director Defendants have violated fiduciary duties to Plaintiff and

24 members of the Class, including the duties of good faith, diligence, candor and fair dealing in

25 connection with the disposition of WatchGuard including their rejection of the February 2006 Vector

26 proposal;

27

28  VERIFIED COMPLAINT BASED UPON SELF-DEALING                          FINKELSTEIN & KRINSK, LLP
    AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF              501 WEST BROADWAY, SUITE 1250
    THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.            SAN DIEGO, CA 92101
                                                                      TEL  NO:  619/238-1333

    PAGE 19

1      (g)     whether the Director Defendants, improperly or for improper purposes, erected

2   barriers intended to impede or discourage competitive offers for the Company or its assets, and/or

3   favored select entities to the shareholders' detriment; and

4      (h)     whether Plaintiff and members of the Class have been harmed by the conduct

5   complained of herein and the amount of such harm.

6      (I)     whether Private Equity Defendants and their co-conspirators engaged in a

7   combination and conspiracy among themselves and/or with the participation of the Director

8   Defendants, to fix, maintain or stabilize price of WatchGuard shares purchased by the Private Equity

9   Defendants;

10      (j)     the identity of the participants in the conspiracy;

11      (k)     the duration of the conspiracy and its nature and the character of the acts of

12   the Private Equity Defendants in furtherance thereof;

13      (l)     whether the actions herein specified violate Section 1 of the Sherman Act;

14      (m)     whether the conduct of the Private Equity Defendants, as alleged in this

15   Complaint, caused injury to the business and property of Plaintiff and other members of the Class;

16      (n)     whether the effect of the Private Equity Defendants' activities on the price of

17   WatchGuard shares was adverse for the shareholders; and

18      (o)     the measure for damages sustained by Plaintiff and the Class.

19   70.     Plaintiff's claims are typical of the claims of the other members of the Class and

20   Plaintiff does not have interests adverse to the Class.

21   71.     Plaintiff, a major institutional investor with a significant financial stake in the

22   outcome of this litigation,  is an adequate representative for the Class, has retained competent

23   counsel experienced in litigation of this nature, and will fairly and adequately protect the interests

24   of the Class.

25   72.     The prosecution of separate actions by individual members of the entire Class would

26   create a risk of inconsistent or varying adjudications with respect to individual members of the Class

27   which would establish incompatible standards of conduct for the party opposing the Class.

28   VERIFIED COMPLAINT BASED UPON SELF-DEALING                    FINKELSTEIN & KRINSK, LLP
     AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF         501 WEST BROADWAY, SUITE 1250
     THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.   SAN DIEGO, CA 92101
                                                                 TEL. NO:  619/238-1333

     PAGE 20

1    73.    A class action is superior to other available methods for the fair and efficient

2    adjudication of this controversy. The Class is readily definable and is one for which records should

3    exist in the files of the Private Equity Defendants and their co-conspirators, and Plaintiff anticipates

4    that there will be no difficulty in the management of this litigation.

5    74.    Defendants have acted on grounds generally applicable to the entire Class with

6    respect to the matters complained of herein, thereby making appropriate the relief sought herein with

7    respect to the Class as a whole.

8                    **FIDUCIARY DUTIES OF THE DIRECTOR DEFENDANTS**

9    75.    By reason of the Director Defendants' positions with the Company as officers and/or

10    directors, said individuals owed fiduciary duties to WatchGuard's public stockholders under

11    applicable law including duties of good faith, fair dealing, loyalty, and candid and full disclosure.

12    76.    As corporate directors, the Director Defendants were required to act in good faith, in

13    the best interests of the Company's shareholders and with such care, including reasonable inquiry

14    and concern, as would be expected of similarly situated prudent persons. In circumstances where

15    bona fide acquisition(s) or tender offer(s) are presented to the Company that represent a substantial

16    premium to the trading price of its stock, the directors were required to take all reasonable steps to

17    properly evaluate and pursue such offers, if reasonable, including responding to offers in a manner

18    consistent with the shareholder's best interests. To act diligently and comply with these duties, a

19    director of a corporation may not take action that:

20                    (a)    adversely affects the available value to the corporation's shareholders;

21                    (b)    contractually prohibits a director from complying with, pursuing, or carrying

22    out his fiduciary duties;

23                    (c)    discourages or inhibits the receipt, encouragement, or consideration of

24    alternative higher offers to purchase the Company or its assets; or

25                    (d)    would otherwise adversely affect a duty to search, solicit, and secure the best

26    value reasonably available under the circumstances for the benefit of the Company's shareholders.

27                    (e)    assist the Private Equity Defendants' actions.

28    VERIFIED COMPLAINT BASED UPON SELF-DEALING                                    FINKELSTEIN & KRINSK, LLP
      AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF                        501 WEST BROADWAY, SUITE 1250
      THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.                   SAN DIEGO, CA 92101
                                                                                   TEL   NO:   619/238-1333

      PAGE 21

77.    In accordance with their duties of loyalty and good faith, the Director Defendants, as directors and/or officers of WatchGuard, are obligated to refrain from:

(a)    pursuing, allowing or encouraging any feasible act or transaction resulting from the divided loyalties of directors or officers;

(b)    using their positions of control to harm WatchGuard, dissipate its assets, or extract personal benefits not shared by, or to the detriment of, the public shareholders of the Company;

(c)    improperly entrenching, enriching or pursuing their interests at the expense, or to the detriment, of WatchGuard's public shareholders;

(d)    adopting non-competitive measures and practices that operate to discourage a competitive bidding process on a level playing field; and/or

(e)    unjustly seeking to perpetuate their positions as managers and/or officers of the Company by failing to pursue, or act in good faith in considering, legitimate offers for the Company and/or its assets.

78.    The Director Defendants, separately and together, violated the fiduciary duties owed to Plaintiff and the other public shareholders of WatchGuard, including duties of loyalty, good faith, candor and independence, insofar as they: a) failed to adopt a suitable process or procedure for consideration of offers to purchase WatchGuard, including an offer by Vector to purchase WatchGuard at a 35% premium to the trading price of the Company's stock, or otherwise take measures to avoid wasting of WatchGuard's assets; b) sought to benefit from their lucrative positions as directors and/or officers of this publicly traded corporation at the expense, and to the detriment, of the shareholders; c) received personal benefits from acquisition suitors to the detriment of the shareholder, by avoiding opportunities for a competitive and/or open bidding process; d) failed to disclose material facts and events relating to the Merger; e) sought to discourage or failed to encourage a competitive bidding process for the sale or merger of WatchGuard; and f) allowed, permitted or encouraged the wrongful actions of the Private Equity Defendants.

VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL  NO:  619/238-1333

PAGE 22

1    79.    As a result of their failure to pursue the Vector offer and/or other third party

2    acquisition interest in the manner required, and by allowing or encouraging the receipt of personal

3    benefits from the FP Merger, and by allowing the improper conduct of the Private Equity

4    Defendants, the Director Defendants have breached their fiduciary duties of care, good faith and fair

5    dealing owed to the Company and its shareholders.

6    **FIRST CAUSE OF ACTION**
     **Breach of Fiduciary Duty Against the Director Defendants**

7

8    80.    Plaintiff repeats and realleges allegations 1 through 79 as though fully set forth herein.

9    81.    The Director Defendants failed to act reasonably or in good faith or as legally required

10   and failed to maximize the value and benefits available to the shareholder. The Director Defendants

11   instead took actions or failed to act, thereby allowing the Director Defendants to retain control and/or

12   enjoy benefits and other personal emoluments as directors and/or senior insiders of WatchGuard in

13   order to impede the maximization of shareholder value.

14   82.    The Director Defendants have violated fiduciary duties of care, loyalty, candor and

15   independence owed to WatchGuard's public shareholders, have placed personal interests above the

16   interests of WatchGuard shareholders, and allowed the waste of Company assets in the course of the

17   conflicting loyalties.

18   83.    The Director Defendants were and are under a duty to:

19        (a)    fully inform themselves of the market value of WatchGuard before taking, or

20   agreeing to refrain from taking, any material actions;

21        (b)    act in the best interest of WatchGuard's shareholders;

22        (c)    safeguard the assets of WatchGuard and act diligently for that purpose;

23        (d)    act in accordance with fundamental fiduciary duties including due care, good

24   faith, loyalty and candor;

25        (e)    act reasonably to ascertain the legality of collusive activity damaging to the

26   shareholders.

27

28 | VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

PAGE 23 | FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL  NO:  619/238-1333 |

1    84.    The Director Defendants have violated their fiduciary duties by failing to encourage,
2  provide for and sustain reasonable good faith offers for the Company (like the Vector offer) and
3  encourage other offers and stay informed. The Director Defendants disregarded the benefit or
4  fairness of prospective transactions for WatchGuard shareholders, including the significant premium
5  these offers represented to the public shareholders and instead allowed personal interest to interfere
6  with the duty owed the public shareholders.  The Director Defendants breached and/or aided and
7  abetted each other Director Defendant's breach of fiduciary duties to WatchGuard and the public
8  stockholders.

9    85.    As indicated by the allegations above, the Director Defendants failed to exercise
10  requisite care, violated responsibilities of loyalty, good faith, candor and independence due
11  WatchGuard's shareholders and failed to properly and/or adequately solicit or pursue offers for
12  WatchGuard assets, including taking necessary steps to maximize the value of WatchGuard for the
13  public shareholders.

14    86.    Because the Director Defendants dominate and control the business and corporate
15  affairs of the Company, and are in possession of private corporate information concerning
16  WatchGuard's assets (including the knowledge of publicly undisclosed bids for the Company as
17  occurred), business and future prospects, there exists an imbalance and disparity of knowledge and
18  economic power between the public shareholders of WatchGuard and the Director Defendants. Said
19  disparity caused it to be inherently unfair for the Defendant directors to reject a proposed transaction
20  in order to benefit themselves as managers and directors of the Company.

21    87.    By reason of the foregoing acts, practices and course of conduct, the Director
22  Defendants have failed to exercise ordinary care and proper diligence in the exercise of their
23  fiduciary obligations toward Plaintiff and the other members of the Class.

24    88.    The Director Defendants are engaged in self dealing, have not acted in good faith, and
25  have breached their fiduciary duties to members of the Class.

26    89.    Each of the Director Defendants has knowingly participated in the unlawful conduct
27  alleged herein in order to advance his own economic interests, or the interests of friends and

28  VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL  NO:  619/238-1333

PAGE 24

1  colleagues, or by abdication of responsibility as a Director, same to the detriment of WatchGuard's
2  shareholders.

3      90.    By the acts, transactions and courses of conduct alleged herein, the Director
4  Defendants, on their own and as part of a common plan, and in breach of their fiduciary duties to
5  WatchGuard's shareholders, are engaged in acts that damaged the Company's shareholders.

6

7      91.    As a result of the Director Defendants' unlawful actions, WatchGuard's public
8  shareholders have suffered damages. The Director Defendants have breached the fiduciary duties
9  owed to WatchGuard shareholders.

10              **SECOND CAUSE OF ACTION**
   **Violation of Section 1 of the Sherman Act Against the Private Equity Defendants**
11

12     92.    Plaintiff repeats and realleges allegations 1 through 91 as though fully set forth herein.
13  The allegations against the Private Equity Defendants proceed under Sections 4 and 16 of the
14  Clayton Act, 15 U.S.C. §§ 15 and 26. The action as to these Defendants allows recovery of treble
15  damages and costs of suit, including reasonable attorneys' fees, for the injuries sustained by Plaintiff
16  and the members of the Class by reason of the violations of Section 1 of the Sherman Act, 15 U.S.C.
17  § 1.

18     93.    The Private Equity Defendants engaged in a combination and conspiracy to fix,
19  maintain or stabilize the price of WatchGuard shares that they eventually purchased. The duration
20  of this conspiracy began approximately May 31, 2006 and ended at a date of approximately October
21  4, 2006 when the FP Merger was approved by WatchGuard shareholders.

22     94.    The actions of the Private Equity Defendants violated at least Section 1 of the
23  Sherman Act by causing injury to the WatchGuard business and property owned by its shareholders,
24  including impermissible collusion on the price per share paid by the Private Equity Defendants to
25  WatchGuard shareholders.

26     95.    The activities of Private Equity Defendants and their co-conspirators were within the
27  flow of, and substantially affected, interstate commerce. During the time period indicated in this

28  | VERIFIED COMPLAINT BASED UPON SELF-DEALING | FINKELSTEIN & KRINSK, LLP |
   | AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF | 501 WEST BROADWAY, SUITE 1250 |
   | THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR. | SAN DIEGO, CA 92101 |
   | | TEL   NO:   619/238-1333 |

1  Complaint, the Private Equity Defendants purchased shares in WatchGuard and acted in concert for
2  that purpose. The Private Equity Defendants and their co-conspirators, and each of them, have used
3  instrumentalities of interstate commerce to purchase and sell equity shares. In October 2006, news
4  reports confirmed that the U.S. Department of Justice had launched an investigation into the price
5  setting practices of private equity firms for practices in which they engage in structuring proposals
6  for the common purchase of business to thereby avoid competitive pricing.

7      96.    For the duration herein indicated, the Private Equity Defendants engaged in a
8  continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, maintain
9  or stabilize the price of WatchGuard shares purchased by Private Equity Defendants in the United
10  States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

11      97.    The contract, combination and conspiracy consisted of the agreement, understanding
12  and concert of action among the Private Equity Defendants, the substantial terms of which were to
13  fix, maintain, or stabilize prices of shares purchased by the Private Equity Defendants in formulating
14  and effectuating the aforesaid contract, combination or conspiracy. The Private Equity Defendants
15  did those things that they combined and conspired to do, including, among other things:

16      (a)    working among themselves for the purpose of bidding collectively to buy
17  WatchGuard;

18      (b)    exchanging information among themselves on bids pricing in connection with
19  their acquisition of WatchGuard;

20      (c)    agreeing among themselves as to the amount to offer in connection with the
21  buyout of WatchGuard;

22      (d)    submitting bid(s) for WatchGuard shares at an agreed-upon price in
23  connection with the acquisition; and

24      (e)    monitoring and implementing the agreement to control the price paid by the
25  Private Equity Defendants.

28  VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL NO. 619/238-1333

PAGE 26

98. The activities described above were engaged in by the Private Equity Defendants for the purpose of effectuating the unlawful arrangements to fix, maintain and/or stabilize prices of WatchGuard shares purchased by the Private Equity Defendants in the United States.

**EFFECTS**

99. The unlawful contract, combination or conspiracy has had the following affects, among others:

a. prices paid by the Private Equity Defendants and their co-conspirators to the Plaintiff and the members of the Class for WatchGuard shares were maintained at artificially low and non-competitive levels; and

b. Plaintiff and members of the Class were paid less for WatchGuard shares sold the Private Equity Defendants than they wold have paid in a competitive marketplace, unfettered by Defendants' collusive and unlawful price-fixing.

100. During and throughout the period of the aforesaid contract, combination or conspiracy, Plaintiffs and members of the Class sold WatchGuard shares to the private Equity Defendants.

101. Plaintiff and the other Class members were paid less for their equity shares that they sold to the Private Equity Defendants than they would have been in a competitive sale.

102. Plaintiff and the Class suffered damages in that the contract, combination or conspiracy, and the acts done in furtherance thereof by the Private Equity Defendants were done in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

103. As a direct and proximate result of the illegal combination, contract or conspiracy, Plaintiffs and the members of the Class have been injured and financially damaged in their respective businesses and property, in precise amounts which are presently undetermined.

104. As a result of suffering said damages relative to the actions of the Private Equity Defendants, the Private Equity Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, should be permanently enjoined and restrained from, in any manner

1   continuing, maintaining or renewing the contract, combination or conspiracy having a similar
2   purpose or effect, and from adopting or following any practice, plan, program or device having a
3   similar purpose or effect, as was experienced by the WatchGuard shareholders.

4       105.    Plaintiff and the Class are entitled to damages that are proper and reasonable for
5   Plaintiff and the Class in an amount as proof allows.

6                                    **JURY TRIAL DEMAND**

7       106.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a
8   trial by jury of all of the claims asserted in this Complaint so triable.

9                                           **PRAYER**

10      WHEREFORE, Plaintiff and the Class demand relief, as follows:

11      A.      Judgment declaring that this action is properly maintained as a class action.

12      B.      Declaring and decreeing that the Director Defendants' conduct has been in breach of
13   the fiduciary duties owed by the Director Defendants to WatchGuard's public stockholders;

14      C.      That the contract, combination or conspiracy, and the acts done in furtherance thereof
15   by the Private Equity Defendants and their co-conspirators, be adjudged to have been in violation
16   of Section 1 of the Sherman Act, 15 U.S.C. § 1.

17      D.      That the Private Equity Defendants, their affiliates, successors, transferees, assignees,
18   and the officers, directors, partners, agents and employees thereof, and all other persons acting or
19   claiming to act on their behalf, be permanently enjoined and restrained from, in any manner
20   continuing, maintaining or renewing the contract, combination or conspiracy having a similar
21   purpose or effect, and from adopting or following any practice, plan, program or device having a
22   similar purpose or effect.

23      E.      That judgment be entered for Plaintiff and members of the Class against the Private
24   Equity Defendants for three times the amount of damages sustained by Plaintiffs and the Class, as
25   allowed by law, together with the costs of this action, including reasonable attorneys' fees.

26      F.      An award to Plaintiff of the costs and disbursements of this action including
27   reasonable attorneys' and experts' fees.

28
VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR

FINKELSTEIN & KRINSK, LLP
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CA 92101
TEL  NO:  619/238-1333

PAGE 28

1        G.      That the Private Equity Defendants be subject to the remedies requested above, and

2    that the Director Defendants be subject to damages for allowing and/or aiding and abetting and/or

3    enabling and/or being jointly liable for the damages owed the shareholder class pursuant to the

4    allegations of anti-competitive conduct by the Private Equity Defendants.

5        H.      Such other and further relief as this Court may deem just and proper.

6

7    DATED:                  By: _____

8                            **FINKELSTEIN & KRINSK LLP**
                        JEFFREY R. KRINSK

9                            MARK L. KNUTSON
                        WILLIAM R. RESTIS

10                           501 West Broadway, Suite 1250
                        San Diego, CA 92101-3593

11                           Tel: (619) 238-1333
                        Fax: (619) 238-5425

12                           Email: jrk@classactionlaw.com

13                           Attorneys for Plaintiff
                        Pennsylvania Avenue Funds

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   VERIFIED COMPLAINT BASED UPON SELF-DEALING
AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE BEHAVIOR.
                                  FINKELSTEIN & KRINSK, LLP
                              501 WEST BROADWAY, SUITE 1250
                               SAN DIEGO, CA 92101
                               TEL. NO: 619/238-1333

PAGE 29



## VERIFICATION

I, Thomas Kirchner, as President and Portfolio Manager of The Pennsylvania Avenue Funds, a Delaware statutory trust, declare that I am the authorized representative of a party to this action and have read the foregoing VERIFIED COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTIES AND FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND ANTI-COMPETITIVE PRACTICES, and know the contents thereof.

I am informed and believe and on that ground allege that the matters stated in the verified complaint are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of Washington, that the foregoing is true and correct.

Executed on _____ 4 , 2006 at __Washington__ , Washington, D.C..

THOMAS KIRCHNER