UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PENNSYLVANIA AVENUE FUNDS,

    Plaintiff,

v.

EDWARD J. BOREY, et al.,

    Defendants.

CASE NO. C06-1737RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion to dismiss Plaintiff's federal securities law claims (Dkt. # 86). The court has reviewed the motion together with all documents filed in support and in opposition, and has heard oral argument. For the reasons set forth herein, the court GRANTS the motion.

## II. BACKGROUND

This action arises from a merger that extinguished WatchGuard Technologies Incorporated ("WatchGuard") as a publicly traded corporation. Plaintiff Pennsylvania Avenue Funds owned shares of WatchGuard, and seeks to represent a class of all persons who held WatchGuard stock at the time of the merger. The court described the merger in a prior order addressing Plaintiff's claims for breach of fiduciary duty, and declines to

ORDER – 1

repeat that description here.  For purposes of this motion, it suffices to focus on two groups of Defendants, to whom the court will refer collectively as "FP" and "Vector."  In describing their actions, the court relies solely on the operative complaint[1] ("Complaint").

Vector acquired 1.57 million shares, approximately 9.4% of WatchGuard's stock, in open-market purchases from March 14 to March 22, 2006.  ¶ 37.  When Vector acquired the stock, it had not made a bid for WatchGuard, but had expressed its interest an acquisition in a February 2006 letter to WatchGuard's board of directors.  ¶ 36.  Vector disclosed its stock purchases in a March 23, 2006 regulatory filing, ¶ 37, and disclosed its intent to make either "an all-cash merger or tender offer."  ¶ 36.

Vector eventually made bids to acquire WatchGuard, as did FP.  ¶¶ 46, 47, 50, 54, 56.  Their bids were structured as cash mergers, requiring WatchGuard's shareholders to approve the merger knowing that they would then exchange their shares for a cash payment.  Before making fixed bids, FP and Vector demanded access to WatchGuard's confidential business information and access to WatchGuard's directors and officers.  ¶¶ 51-53.  On March 23, 2006, Vector executed a non-disclosure agreement, after which it was given access to WatchGuard's non-public information.  ¶ 53; Pltf.'s Opp'n at 4.

As of June 26, 2006, FP had made a $4.60 per share bid, and Vector had made a $4.65 per share bid.  ¶ 50.  Plaintiff claims that Vector and FP then "entered into a contract, combination or conspiracy to artificially fix the price, refrain from bidding, or rig the tender offer bids for WatchGuard shares."  ¶ 54.  Vector agreed to stop pursuing WatchGuard, and stand aside while FP made a lower bid.  *Id.*  FP later lowered its bid to $4.25 per share, and WatchGuard's board accepted the bid on July 25, 2006.  ¶ 56.  On August 16, Vector announced an agreement to fund half of FP's acquisition of

---

[1] Plaintiff relies upon its first amended complaint (Dkt. # 52).  The court will use bare "¶" symbols when citing this pleading.

ORDER – 2

WatchGuard in exchange for a 50% interest in WatchGuard after the merger. ¶ 65. WatchGuard's shareholders approved the merger, which closed in October 2006. ¶ 69.

### III. DISCUSSION

Plaintiff claims that Vector traded on inside information when buying WatchGuard shares between March 14 and March 22, 2006 and when it agreed with FP to take a 50% interest in WatchGuard after the merger. Plaintiff also claims that Vector defrauded investors by not disclosing nonpublic, material information it learned during the merger process. Vector moves to dismiss these claims under Fed. R. Civ. P. 12(b)(6).

### A. Standard of Review on a Motion to Dismiss

Where a defendant alleges that a claim's factual allegations are insufficient to state a claim, the court's review of the allegations varies depending on which pleading standard applies. Ordinarily, the court reviews factual allegations under the liberal pleading standard of Fed. R. Civ. P. 8(a), construing all allegations in the light most favorable to the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). A complaint need not contain detailed factual allegations, but it must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

For allegations that sound in fraud, a plaintiff must meet the heightened pleading standard of Fed. R. Civ. P. 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003). The plaintiff must provide allegations that are specific enough to explain

what about the defendant's conduct is false or misleading, so that the defendant can formulate a specific denial. *Id.* at 1106.

Alternatively, where a defendant successfully challenges a plaintiff's legal theory, rather than the sufficiency of the plaintiff's allegations, the court must also dismiss the complaint. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.").

The Private Securities Litigation Reform Act ("PSLRA") goes well beyond the pleading requirements of the Federal Rules of Civil Procedure, imposing onerous burdens on a plaintiff seeking to plead violation of federal securities law. 15 U.S.C. § 78u-4(b). When pleading a violation based on a misrepresentation or omission, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In addition, for claims requiring a particular mental state, the complaint must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind," and must do so for "each act or omission alleged to violate" the securities laws. 15 U.S.C. § 78u-4(b)(2) (emphasis added). When determining if a complaint raises a strong inference, a court must consider "*all* reasonable inferences to be drawn from the [plaintiff's] allegations, including inferences unfavorable to the plaintiffs." *Gompper v. Visx, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (emphasis in original). A plaintiff can prevail only by raising an inference of scienter that is "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2505 (1997). The PSLRA is the

ORDER – 4

death knell for the "customary latitude" a court affords a complaint in considering a motion to dismiss under Rule 12(b)(6). *Gompper*, 298 F.3d at 896; *see also Sparling v. Daou (In re Daou Sys., Inc. Sec. Litig.)*, 411 F.3d 1006, 1022 (reiterating *Gompper*).

The court now applies these pleading standards to each of Plaintiff's federal securities claims.

## B.     Insider Trading Under Section 10(b) and Rule 10b-5

Plaintiff bases its insider trading claims on two securities purchases by Vector. The first was Vector's acquisition of 1.57 million shares of WatchGuard stock between March 14, 2006 and March 22, 2006. The second was Vector's purchase of a 50% interest in Gladiator, the corporate entity FP used to complete the WatchGuard merger.

Plaintiff seeks relief under Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 U.S.C. § 240.10b-5). Courts have charted two paths to pleading insider trading under Rule 10b-5. First, a corporate insider is liable when he "trades in the securities of his corporation on the basis of material, nonpublic information." *United States v. O'Hagan*, 521 U.S. 642 at 651-52 (1997) (describing "classical theory" of insider trading liability). The classical theory requires that the trader owe a duty either to the party with whom he trades, the shareholders of the company in whose stock he trades, or that he obtain information from someone he knows or should know breached a duty in disclosing the information to him. *SEC v. Clark*, 915 F.2d 439, 443 (9th Cir. 1990).

The second theory focuses on the duty of the trader to the source of the material, nonpublic information. Under the "misappropriation theory" of insider trading liability, a person who acquires information from a source to whom he owes a duty of loyalty and confidentiality is liable if he trades on the information. *O'Hagan*, 521 U.S. at 652.

ORDER – 5

Although neither Section 10(b) nor Rule 10b-5 provide an express private right of action, courts have held that private plaintiffs may recover, subject to certain limitations.[2] *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1000-01 (9th Cir. 2002).

A complaint alleging a Rule 10b-5 violation is subject not only to the heightened pleading requirements of Fed. R. Civ. P. 9(b), but also the pleading rules of the PSLRA. *Daou*, 411 F.3d at 1014; *see also Shurkin v. Golden State Vintners, Inc.*, 471 F. Supp. 2d 998 (N.D. Cal. 2006) (applying PSLRA to insider trading claim). To satisfy the PSLRA in the context of a Rule 10b-5 allegation, a plaintiff must plead with particularity facts that create a "strong inference of, at a minimum, deliberate recklessness." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999) (internal quotation omitted). Under Rule 10b-5, the required state of mind is "scienter," which the Supreme Court has defined as a "mental state embracing intent to deceive, manipulate, or defraud." *Id.* at 975 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 n.12 (1976)). In holding that scienter requires at least "deliberate recklessness," the Ninth Circuit rejected the notion that pleading "simple recklessness" suffices. *Id.* at 977. Instead, a plaintiff seeking to overcome the PSLRA's pleading hurdle must allege "specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Id.* at 979.

Plaintiff's allegations do not add up to a claim for insider trading. First, Plaintiff's pleadings raise considerable doubt that Vector had material, nonpublic information when

---

[2] Among these limitations, only persons who "traded contemporaneously with the insider" may bring civil claims for insider trading. *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993); *see also Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1005 (9th Cir. 2002) (extending contemporaneous trading requirement to actions under Rule 14e-3). Vector interprets this limitation to require allegations that a plaintiff bought at the same time that an insider sold stock, or sold at the same time that an insider bought stock. No court, however, has construed the requirement so strictly. The court's ultimate disposition of this motion makes it unnecessary to decide whether to adopt Vector's interpretation of the contemporaneous trading requirement.

ORDER – 6

it bought WatchGuard stock in March 2006.  The sole allegation supporting Plaintiff's theory is that "Vector was given material non-public information, including information that caused Vector to continue purchasing WatchGuard stock." ¶ 37.  Other allegations sharply contradict this one.  Plaintiff alleges that Vector acquired nonpublic information from WatchGuard's board "[d]uring the course of its due diligence." ¶ 52.  Vector also "executed non-disclosure agreements *prior* to receiving due diligence materials." ¶ 53 (emphasis added).  Plaintiff admits that Vector executed the agreements on March 23, 2006.  Pltf.'s Opp'n at 4.  The resulting inference is that Vector received nonpublic information only *after* it completed its alleged "insider" trades on March 22, 2006.  This inference finds further support in Plaintiff's admission that Vector's initial bid for WatchGuard in May 2006 came "before receipt [of] due diligence materials . . . ." Pltf.'s Opp'n at 12 (citing ¶¶ 46-47).  Nonetheless, at oral argument, Plaintiff urged the court to focus on the lone allegation in its complaint supporting its claim that Vector had inside information prior to March 23, 2006, ignoring Plaintiff's contradictory allegations.

Even accepting Plaintiff's interpretation of its contradictory pleadings, the allegation that Vector did not sign a non-disclosure agreement until *after* it bought WatchGuard stock is fatal to Plaintiff's claim.  To the extent that Plaintiff relies on the "classical" insider trading paradigm, it has failed to allege any facts from which the court could infer that Vector owed a duty to the parties to Vector's open market transactions, or to WatchGuard's shareholders.  Plaintiff also makes no allegations from which the court can infer that Vector knew or had reason to know that WatchGuard's directors breached fiduciary duties in providing it with inside information.[3]  To the extent that Plaintiff

---

[3] To the extent that Plaintiff alleges that anyone at WatchGuard breached a duty in giving information to Vector., the allegation is untenable for the reasons stated in the court's prior order dismissing Plaintiff's breach of fiduciary duty claims against WatchGuard's directors.

ORDER – 7

asserts a claim under the misappropriation theory, its admission that WatchGuard signed no confidentiality agreement until after its March trades is fatal.  Absent a non-disclosure agreement or other source of duty, Vector owed no duty to WatchGuard when it bought stock in March 2006.  Lacking a duty to WatchGuard, the source from which it allegedly acquired its information, Vector cannot be liable under a misappropriation theory.

Plaintiff's claim based on Vector's acquisition of an interest in Gladiator suffers from deeper flaws.  Under either a misappropriation or classical theory, a trader must refrain from trades in the stock of the corporation about which it has inside information.  Plaintiff offers no authority transforming this prohibition into a ban on acquiring stock of a different corporate entity.  Plaintiff owed no duty to anyone to refrain from buying Gladiator stock.

Even if the court were to ignore these fundamental deficiencies, it could not ignore that Plaintiff's allegations lack the specificity necessary to comply with the PSLRA.  Plaintiff provides no detail regarding what confidential information Vector acquired from WatchGuard.  The PSLRA requires that Plaintiff "state with particularity facts giving rise to a strong inference" that Vector acted with scienter.  15 U.S.C. § 78u-4(b)(2).  Plaintiff states no facts regarding the information Vector obtained, it merely asserts that the information was "material" and "nonpublic." Absent more detail, the court cannot infer that Vector acted with at least deliberate recklessness in its later acquisitions of WatchGuard stock.  Plaintiff thus fails to raise a strong inference of scienter, and fails to adequately plead a claim for insider trading under Rule 10b-5.

**C.     Plaintiff's Williams Act Claims**

Plaintiff makes two claims under the Williams Act (15 U.S.C. §§ 78m(d)-(e), 78n(d)-(f)), which governs tender offers to acquire all or a significant portion of a target company's securities.  Plaintiff alleges that Vector violated the provision barring

ORDER – 8

misrepresentations and other "fraudulent, deceptive, or manipulative acts" in connection with a tender offer. 15 U.S.C. § 78n(e). Plaintiff also alleges that Vector violated the regulation promulgated under the Williams Act making it unlawful for a person to acquire securities while in possession of material, non-public information related to a tender offer for those securities. 17 C.F.R. § 240.14e-3 ("Rule 14e-3").

Vector contends that Plaintiff cannot seek Williams Act relief because neither it nor FP made a "tender offer" for WatchGuard securities. Curiously, neither Congress nor the SEC has defined "tender offer." *Polinsky v. MCA, Inc.*, 680 F.2d 1286, 1290 (9th Cir. 1982). Courts have offered guidance for determining if an acquisition bid is a tender offer, but none has squarely addressed an offer like the one before the court. *See, e.g.*, *id.* at 1290-91 (relying on seven-factor inquiry into potential tender offer from *Wellman v. Dickinson*, 475 F. Supp. 783, 823-24 (S.D.N.Y. 1979)). The court finds it unnecessary to determine if FP or Vector made tender offers, or if the Williams Act applies to Vector. Assuming that the Act applies, Plaintiff has not stated a cognizable claim.

**1. Tender Offer Fraud**

A claim for fraud under the Williams Act is much like a claim under Rule 10b-5. *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1150 (N.D. Cal. 2006). Section 13(e), like Section 10(b), focuses on misrepresentations:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

15 U.S.C. § 78n(e). As with a claim under Section 10(b), a plaintiff claiming fraud in violation of the Williams Act must prove material misrepresentations or omissions, and must prove that a defendant acted with scienter. *Rubke*, 460 F. Supp. 2d at 1150.

ORDER – 9

Plaintiff misconstrues the anti-fraud provision of the Williams Act as a mandate for disclosure. The provision does not require disclosure, it prohibits untrue statements, or omissions that make otherwise true statements misleading. *See Brody*, 280 F.3d at 1006 ("To be actionable under the securities laws, an omission must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."). It is not sufficient for Plaintiff to point to missing disclosures. *Id*. ("No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."). Other provisions of the Williams Act, and regulations promulgated under them, require specific disclosures about the "qualifications and intentions of the offering party." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58 (1975). These particularized disclosure mandates, however, do not convert the separate anti-fraud provision of the Williams Act into a source of a sweeping duty of disclosure. The purpose of the Williams Act is not to make the acquiror the fiduciary of the target company or its shareholders, but rather to ensure informational neutrality between the target and the acquiror. *Id.*

Plaintiff's fraud claim relies on assertions that Vector failed to disclose something regarding its plan to acquire WatchGuard. As the court's formulation of the claim indicates, the Complaint provides few specifics as to what Vector should have disclosed. If the claim is that Vector should have disclosed the reasons for its pricing of its offers for WatchGuard, the claim has no basis, because neither the Williams Act nor any other authority obligates an acquiror to explain its valuation of a target company. Plaintiff points to no affirmative representation regarding the value of WatchGuard that is misleading in light of Vector's nondisclosures. Vector's only disclosure regarding the

value of WatchGuard was the price it placed on its bids for the company. There is no inference that these disclosures were misleading.

If Plaintiff's fraud claim is that Vector should have revealed whatever it learned after it was granted access to WatchGuard's inside information, the claim fails for the same reason. The Complaint reveals that Vector simply kept silent regarding what it learned in due diligence, and the Williams Act does not prohibit this conduct.

If Plaintiff's fraud claim is that Vector should have disclosed its agreement with FP to share in the funding of the merger and its proceeds, the claim lacks merit because Plaintiff admits that the companies disclosed the agreement in advance of the vote on the merger. Even if, as Plaintiff explained at oral argument, FP and Vector reached a "secret agreement" before publicly announcing it, Plaintiff fails to explain why the failure to disclose the agreement earlier was material.

Finally, Plaintiff's fraud claim is untenable to the extent it faults Vector for not disclosing potential antitrust liability arising out of the FP merger. Every case upon which Plaintiff relies for this assertion concerns mergers wherein the resulting combined corporation controls enough of a relevant market to warrant antitrust scrutiny by regulatory bodies. There is no allegation that the WatchGuard merger resulted in such a combination. Instead, the antitrust liability to which Plaintiff points is Plaintiff's own claim that Vector and FP's combined bid violates antitrust principles. The court will address that claim in a separate order. For purposes of this motion, it suffices to note that the notion that Vector should have guessed that someone would sue it for joining FP's merger bid and disclosed as much to WatchGuard shareholders is unsupportable. Vector disclosed its arrangement with FP in advance of the merger vote, and this is sufficient to disclose the underpinnings of the antitrust theory on which Plaintiff relies.

ORDER – 11

Plaintiff's failure to state a Williams Act fraud claim is not due to vague pleading[4], but rather to the misconception that Vector owed a duty of disclosure to WatchGuard or its shareholders. Neither the Williams Act nor any other authority supports this notion. For that reason, Plaintiff cannot state a claim under the anti-fraud provision of the Act.

**2.    Insider Trading In Connection with a Tender Offer**

Rule 14e-3, a regulation promulgated under the Williams Act, proscribes certain trades in connection with a tender offer:

> (a) If any person has taken a substantial step or steps to commence, or has commenced, a tender offer (the "offering person"), it shall constitute a fraudulent, deceptive or manipulative act or practice within the meaning of section 14(e) of the Act for any other person who is in possession of material information relating to such tender offer which information he knows or has reason to know is nonpublic and which he knows or has reason to know has been acquired directly or indirectly from:
>
> (1) The offering person,
>
> (2) The issuer of the securities sought or to be sought by such tender offer, or
>
> (3) Any officer, director, partner or employee or any other person acting on behalf of the offering person or such issuer,
>
> to purchase or sell or cause to be purchased or sold any of such securities or any securities convertible into or exchangeable for any such securities or any option or right to obtain or to dispose of any of the foregoing securities, unless within a reasonable time prior to any purchase or sale such information and its source are publicly disclosed by press release or otherwise.

17 C.F.R. § 240.14e-3.

---

[4]Because Plaintiff's Williams Act fraud claim fails for lack of a cognizable legal theory, there is no need to determine whether it satisfied the PSLRA. Nonetheless, as an independent basis for dismissal, the court notes that Plaintiff fails to identify any misrepresentation or omission that falls under the Williams Act's anti-fraud provision. This means that Plaintiff has not met its burden under the PSLRA to "specify each statement alleged to have been misleading [and] the reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). The natural result of Plaintiff's failure to adequately plead misrepresentations or omissions is that it does not raise a "strong inference" that Vector acted with scienter. 15 U.S.C. § 78u-4(b)(2).

ORDER – 12

As with its other claims, it is uncertain what allegations form the foundation for Plaintiff's Williams Act insider trading claims. If it is Vector's acquisition of WatchGuard stock on the open market in March 2006, Plaintiff's claims fail because Rule 14e-3 authorizes Vector's purchases. As Plaintiff admits, Vector was an offeror under the Williams Act until at least June 26, 2006, when it entered an agreement with FP to withdraw from the bidding process. ¶ 54. Vector was thus an "offering person" under Rule 14e-3 in March 2006, and was permitted to acquire WatchGuard securities. Only "[an]other person," not the "offering person," can violate Rule 14e-3 by purchasing the target company's securities.

If Plaintiff's Rule 14e-3 claim is based on Vector's acquisition of a 50% interest in Gladiator, FP's merger vehicle, in exchange for funding half of the WatchGuard merger, the claim fails for at least two reasons. First, the text of Rule 14e-3 prohibits only insider trading in the target company's securities. Vector's purchase of Gladiator securities is not unlawful. Second, Rule 14e-3 is not a categorical ban on trading with non-public information, it is a ban on trading without disclosing that information to the public. On August 16, 2006, Vector disclosed in a regulatory filing its intention to acquire a 50% interest in Gladiator. To the extent that this can be viewed as an acquisition of WatchGuard securities, the information underlying that acquisition was disclosed "by press release or otherwise" and "within a reasonable time prior to any purchase or sale," as Rule 14e-3 requires.

Plaintiff's insider trading claims against Vector under the Williams Act suffer from foundational legal defects that ensure that no amended allegations can revive them.

**D.     Derivative Claims**

The court must dismiss Plaintiff's final two securities claims because they require a well-pleaded predicate securities violation. Plaintiff supplements its insider trading

ORDER – 13

claims with a claim under Section 20A of the Exchange Act (15 U.S.C. ¶ 78t-1).  That statute imposes liability on a person "who violates any provision [of the securities laws] or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information." 15 U.S.C. ¶ 78t-1(a); *see also Johnson v. Alijan*, 490 F.3d 778, 781 n.11 (9th Cir. 2007) (noting that Section 20A "require[s] a predicate violation of the Exchange Act, or the rules promulgated thereunder").  The court's dismissal of Plaintiff's other securities claims leaves Plaintiff with no predicate violation on which to base its Section 20A claim.

Plaintiff's claim under Section 20(a) of the Exchange Act (15 U.S.C. ¶ 78t(a)) meets the same fate.  This section imposes liability on "control persons" who direct the actions of a person who violates another provision of the securities laws.  *See Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996) (noting that a claim for control person liability requires a "show[ing] that a primary violation was committed").  Plaintiff asserts liability against defendants Vector Capital Corporation and Alexander Slusky as "control persons" with respect to Vector.  The court's dismissal of the primary violation claims against Vector, however, mandates dismissal of Plaintiff's Section 20(a) claim.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS the motion (Dkt. # 86) to dismiss Plaintiff's securities law claims.  The court dismisses Plaintiff's fraud and insider trading claims under the Williams Act with prejudice, as no amendment could cure the deficiencies that led the court to dismiss those claims.  The court will grant Plaintiff leave to amend as to its insider trading claim under Rule 10b-5, but directs that the Plaintiff prepare no amendment until the court resolves the last of the motions to dismiss pending

ORDER – 14

in this matter. At that time, the court will provide specific instructions on amending the complaint.

Dated this 13th day of February, 2008.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 15